UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JULIE A. DEZARN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:18-cv-357-PPS |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This is a Social Security disability benefits appeal, in which plaintiff Julie Dezarn asks that I reverse the Social Security Administration's denial of her application for disability benefits. She says that a remand is necessary because the ALJ made several errors when he evaluated her application. Because I agree with her that the ALJ insufficiently explained his reasons for discounting the medical opinion testimony from two of Dezarn's physicians, the ALJ's decision must be reversed and the matter remanded for further consideration.

**Background**

Julie Dezarn was 39 years old at the time she applied for Social Security disability benefits. [A.R. 255[1].] She previously worked as an insurance sales associate from 1997 to 2010 and has completed two years of college. [A.R. 260-261.] She applied

---

[1] The Administrative Record (A.R.) in this case is found at Docket Entry # 10. Citations in this opinion will be to the page number in the lower right-hand corner of the A.R.

-1-

for benefits on March 9, 2015, alleging a disability onset date of May 4, 2012. [A.R. 237.] While she alleged some additional impairments, such as seizures, sleep apnea, and cardiovascular issues, her claim for disability was based primarily on mental health impairments, as well as back pain resulting from a motor vehicle accident that occurred in 2012. [A.R. 19, 22.] In a written decision dated July 14, 2017, the ALJ denied Dezarn benefits and laid out the reasoning for his decision. Dezarn's application was further denied at all stages of the administrative appeals review. [A.R. 1.]

In his written decision, the ALJ assigned Dezarn the following severe impairments: lumbar disc herniation with 2011 laminectomy, status post 2012 fusion, migraines, mild obesity, postural orthostatic hypotension, anxiety and depression. [A.R. 19.] Next, the ALJ determined that Dezarn did not fit any of the applicable listings for back impairments (Listing 1.04), or those for her mental impairments (Listings 12.04 and 12.06). [*Id.*]

At the next step, the ALJ determined Dezarn's Residual Functional Capacity (RFC) in order to evaluate the extent of her ability to find sufficient employment given the limitations imposed by her impairments. And like in many Social Security appeals, this is where the main challenge to the ALJ's written decision lies. The ALJ arrived at an RFC that found Dezarn could "perform sedentary work as defined in 20 CFR 404.1567(a)" with additional limitations including, "only occasional stooping, crouching, crawling, kneeling and balancing, no ladders, ropes or scaffolds, no unprotected heights, heavy equipment, operating machinery or hazards." [A.R. 20.] The ALJ further found that Dezarn could "understand, remember and apply simple

information," "adapt to routine work changes," and "perform simple, routine work that stays the same day-to-day" so long as it had "no public contact", "no frequent communication, [and] no more than occasional interaction with co-workers and supervisors." [A.R. 20-21.]

Throughout the written decision, the ALJ noted where many of Dezarn's claimed physical impairments and symptoms were unsupported by the record. For example, "[t]he claimant stated that if she stood too long, her feet turned purple and her hands become numb." [A.R. 26.] But an October 2016 EMG showed no indications supporting the hand numbness and "[n]o source appears to have documented her alleged purple foot discoloration, although many physicians have examined the claimant." [*Id*.] The ALJ further noted several times how Dezarn's medical records showed that her migraines were treated and under control from Botox injections. [A.R. 25-28.] In sum, the ALJ found that "the medical evidence of record addressing the claimant's physical impairments is not supportive of her allegations of disabling symptomatology." [A.R. 26.]

The ALJ similarly disbelieved many of Dezarn's claimed psychological impairments. While she reported two separate suicide attempts, the ALJ discounted their severity because they did not result in trips to the ER and because none of Dezarn's doctors recommended inpatient treatment in their aftermath. [A.R. 27-28.] Likewise, she reported at one point that she was unable to drive due to seizures, but then testified that she drives three times a week. [A.R. 28.] It seems clear that it was in large part due to the contradictions between Dezarn's testimony and her medical

records that the ALJ arrived at the RFC he assigned to Dezarn. Dezarn does not take issue with any specific component of this RFC per se. Instead, Dezarn's arguments are broader and focus on *how* the ALJ arrived at that RFC, namely how the ALJ weighed medical opinion testimony offered by Dezarn.

At the final step of the analysis, the ALJ found Dezarn was not disabled. To do so, the ALJ utilized the RFC to ask a Vocational Expert ("VE") whether someone with this hypothetical RFC could find employment. The VE testified that someone with the limitations outlined in Dezarn's RFC could not return to her prior work as an administrative clerk. [A.R. 29.] That said, the VE testified that they could still perform the representative jobs of an inspector, an assembler, and a polisher. [A.R. 30.] Because such jobs existed in a sufficient capacity, the ALJ determined that Dezarn was not disabled. [*Id.*] Accordingly, her application for benefits was denied.

## Discussion

My role in reviewing appeals from the Social Security Administration is meant to be a limited one. I do not review the entire administrative record with fresh eyes and determine whether a claimant is disabled and entitled to benefits. Instead, I review the ALJ's written decision to see if the ALJ applied the correct legal standards and supported his factual determinations with substantial evidence. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). If substantial evidence supports the ALJ's factual findings, they are conclusive. *Id.*; 42 U.S.C. §405(g).

The Supreme Court has set a low bar for what constitutes "substantial evidence." It means more than a "scintilla" of evidence, but less than a preponderance of the

evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Evidence is substantial if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). My review is guided by the principle that "[t]he ALJ is not required to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and the conclusions so that [I] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). However, the necessary logical bridge must have a solid foundation, and cannot be based on cherry-picked evidence or an improper consideration of the issues and evidence. In other words, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (quoting *Lopez ex rel. Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003)).

So let's get to the heart of the appeal, the ALJ's discounting of Dezarn's symptoms and limitations as a result of her recognized impairments. The ALJ's disbelief as to many of Dezarn's reports is understandable. Several of them, especially her physical complaints, seem unsupported by objective medical evidence. But there was more to this case than Dezarn's testimony.

Her main argument is the ALJ did not sufficiently defer to the medical opinions offered in support of Dezarn's application for benefits. This implicates what is called the "treating physician rule." This basic rule of Social Security cases "directs the administrative law judge to give controlling weight to the medical opinion of a treating physician if it is 'well-supported by medically acceptable clinical and laboratory

diagnostic techniques' and 'not inconsistent with the other substantial evidence.'" *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (citation omitted). Dezarn says that the ALJ improperly discounted her treating physicians' opinions and instead gave too much weight to the opinions of a non-treating physician who reviewed her records as part of the disability benefits application process.

The primary opinions at issue are those of Dr. Parthiv R. Shah and Dr. Joseph Fannelli, both of whom were Dezarn's treating physicians in different capacities and both of whom the ALJ gave little weight to. The ALJ discounted Dr. Shah's opinion because, in the ALJ's opinion, the statement did "not provide enough information to determine whether Dr. Shah would agree that the claimant would be found disabled." [A.R. 28.] This is problematic. First, as the ALJ acknowledged just before rendering his conclusion on Dr. Shah's opinion, there are specific criteria that an ALJ must use to evaluate treating physician opinion testimony. [*Id.*] This requires an analysis of among other things, the length of treatment relationship, nature and extent of the treatment relationship, how much the opinion is supported by underlying medical evidence, consistency with the record as a whole, and the physician's specialty, if any. 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ didn't do that there. And the failure to do so is reversible error. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) ("We have likewise insisted that an ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record."); 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.").

Instead, the ALJ rejected Dr. Shah's opinion only because it was "vague." But there is no discussion of any underlying records or evidence, either which supports or contradicts Dr. Shah's opinion. Dr. Shah's statement lays out a brief summary of Dezarn's physical medical conditions and notes that she would have difficult "walking, lifting, carrying, handling objects, and traveling." [A.R. 1470.] Thus, the ALJ's statement that the "opinion does not specify what type of restrictions the claimant would have" is not quite correct, even if Dr. Shah's statements do not fit the granularity of the specific restrictions commonly found in disability cases. [A.R. 28.] It may not be the most detailed opinion, but it cannot be summarily dismissed simply on vagueness grounds.

Furthermore, taking the ALJ's assessment at face value, what the ALJ seemed to expect Dr. Shah to have said makes little sense. The ALJ stated that Dr. Shah's "statement does not provide enough information to determine whether Dr. Shah would agree that the claimant would be found disabled." [A.R. 28.] But the question of whether Dezarn is disabled is strictly the ALJ's decision to make, based on all the evidence presented. *See Clifford*, 227 F.3d at 870 ("A claimant, however, is not entitled to disability benefits simply because a physician finds that the claimant is 'disabled' or 'unable to work.' Under the Social Security regulations, the Commissioner is charged with determining the ultimate issue of disability."). An ALJ should not discount a treating physician's opinion because it fails to do something the treating physician is effectively prohibited from doing.

The next treating physician at issue is Dezarn's psychiatrist, Dr. Fanelli, who had a three-year record of treating Dezarn. He provided medication oversight to Dezarn

from March 2014 to April 2017. [A.R. at 27.] The ALJ mentioned the length of Dezarn's treatment relationship with Dr. Fannelli and discussed the underlying records, but only at a very high level. The ALJ stated that "his 300+ pages of progress notes are generic and say very little." [A.R. 27.] Furthermore, the ALJ found that Dr. Fanelli's assessment was contradicted by the underlying medical records. [*Id.*]

The contradictions noted by the ALJ were that Dezarn mentioned going on job interviews and that on one occasion she visited a friend who lives in Indianapolis, a few hours' drive away from where Dezarn lives. [A.R. 29.] Regrettably, the ALJ failed to cite to any pages in the record where this information appeared. But even assuming those all to be true, it's difficult to see how those two things so contradict Dr. Fanelli's opinion that the ALJ was free to effectively disregard it. Indeed, these aren't so much an ALJ noting a major contradiction in the underlying record, but instead an ALJ who has seized on two fleeting instances in the record, and then arriving at his own conclusion based on those two instances. This strikes me as a classic case of an ALJ "playing doctor," which is not their role. *E.g.*, *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings[.]"). In other words, the ALJ has disregarded Dr. Fanelli's conclusions because the ALJ himself thinks that visiting a friend a few hours away and going on a few job interviews is categorically incompatible with major depressive disorder and panic disorder. This is impermissible and a basis by which to reverse the ALJ's decision. Dr. Fannelli's assessment wasn't that Dezarn was a complete recluse, unable to have any social interaction whatsoever. Instead, his conclusion and medical

opinion was that Dezarn has treatment-resistant major depressive discover and panic disorder, that she is often severely symptomatic, and that when she is, she is unable to perform most work-related functions. [A.R. 1965.]

In the end, after proper evaluation of the medical opinion testimony, the result in this case may be the same. The contradictions between Dezarn's testimony and what she reported and was reflected in her underlying records are evident from the ALJ's written decision. But there are strict demands of an ALJ in order to disregard the opinions of treating physicians like Dr. Shah and Dr. Fanelli. Disbelieving Dezarn's testimony does not, by itself, provide a basis to disregard the opinions of the treating physicians. Those demands were not met here and for that reason, the ALJ's decision cannot be affirmed. As for Dezarn's remaining arguments, they can be addressed to the ALJ in the first instance on remand.

**Conclusion**

For the foregoing reasons, the decision of the ALJ is REVERSED and the matter is REMANDED for further proceedings.

SO ORDERED on February 7, 2020.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT